**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
OHIO WESTERN DIVISION**

Dennie Henry, et al.,                          )
                                               )
               Plaintiffs,                     ) Case No. 1:13-CV-419
                                               )
        vs.                                    )
                                               )
City of Middletown,                            )
                                               )
               Defendant.                      )

<u>O R D E R</u>

This matter is before the Court on the motion for summary judgment filed by the Defendant, the City of Middletown.  Doc. No. 13.  For the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED.**   Also before the Court is the City's motion to strike and/or seal the affidavit of Carrie Carpenter.  Doc. No. 23.  That motion is not well-taken and is **DENIED.**

I. <u>Background</u>

Plaintiffs Dennie Henry, Brian Baker, and Ira Hardy present claims for alleged constitutional violations against the City of Middletown, Ohio pursuant to 42 U.S.C. § 1983 arising from the City's impoundment and ultimate disposition of their cars.  The following facts about each Plaintiff and his claims are not in dispute.

A. <u>Dennie Henry</u>

According to police reports on file, on the afternoon of July 20, 2011, someone drove past 123 Manhattan Street in Middletown and fired three shots into the house.  Five persons were in the house at the time, although no one was injured during the incident.  The Middletown Police were summoned and a neighbor reported seeing Henry shoot at the

house from his Dodge Neon with a rifle.  The police responded to Henry's house to
continue the investigation.  There, they discovered an apparently intoxicated Henry, a .22
caliber rifle hidden in his neighbor's flower bed, and five spent shell casings on the
passenger seat of his car.  The police arrested Henry and charged him with felonious
assault, discharging a firearm within city limits, using a weapon while intoxicated, and
tampering with evidence.  The police impounded Henry's car and had it towed and stored
at Mark's Towing.  Doc. No. 18-1, at 3-5.[1]

On July 27, 2011, the police department sent Henry a notice by certified mail
advising him that his car was impounded and could be reclaimed by presenting proof of
ownership, a writ of replevin or other court order.  The notice also advised Henry that his
car would be sold pursuant Ohio Rev. Code §§ 4513.61 and 4513.62 if he did not take
action to reclaim it within 10 days.[2]  Doc. No. 18-2, at 3.  Also enclosed in the mailing was

---

[1]      In relevant part, Ohio Rev. Code § 4513.61 permits the impoundment any
vehicle that "has come into the possession of the sheriff, chief of police, or state
highway patrol trooper as a result of the performance of the sheriff's, chief's, or trooper's
duties[.]"

[2]      In this regard, § 4513.61 states:

> The sheriff or chief of police immediately shall cause a search to be made
> of the records of the bureau of motor vehicles to ascertain the owner and
> any lienholder of a motor vehicle ordered into storage by the sheriff or
> chief of police, or by a state highway patrol trooper, and, if known, shall
> send or cause to be sent notice to the owner or lienholder at the owner's
> or lienholder's last known address by certified mail with return receipt
> requested, that the motor vehicle will be declared a nuisance and
> disposed of if not claimed within ten days of the date of mailing of the
> notice.

Ohio Rev. Code § 4513.61.  Section 4513.62 sets forth the various ways in which the
police department can dispose of unclaimed vehicles.

a copy of the impound ticket, which stated that Henry would have to pay the towing and storage fees in order to reclaim the car.  Id. at 4.  The Postal Service attempted, unsuccessfully, to deliver the notice to his home on three occasions between July 27, 2011 and August 15, 2011.  Id.

Henry was released from jail on August 5, 2011, but then was admitted to the hospital after suffering a heart attack.  Henry remained in the hospital until August 9, 2011 when he was discharged to a nursing home for treatment for dementia.  On September 4, 2011, Henry was returned to the hospital for treatment for pneumonia.  On September 11, 2011, Henry was returned to the nursing home, where he remained until October 2011.  Henry Aff. (Doc. No. 21-2) ¶¶ 5-8.  At some point during his nursing home stay, Henry deputized his friend, Ken Brewer, to retrieve the Neon from the impound lot.

According to Brewer's affidavit, he contacted the police department on August 29, 2011 and was advised that Henry's car was being held at Mark's Towing.  Brewer immediately contacted Mark's Towing and told them that he would claim Henry's car and requested the impound bill.  Brewer then states that he called Mark's Towing again on September 7, 2011 and was advised that Henry's car had been sold at an auction and not to call back.  Brewer sold Henry a different car in October 2011, and, while assisting Henry with the paperwork, learned from the title agency that Mark's Towing did not obtain the title to Henry's Neon until September 15 or 16, 2011 and had not sold the car until after then.  Brewer Aff. (Doc. No. 18-3) ¶¶ 4-10.  Evidence submitted by the City, however, indicates that it completed an Unclaimed and Abandoned Junk Motor Vehicle Affidavit pursuant to

3

Ohio Rev. Code § 4513.61[3] and assigned the title to the Neon to Mark's Towing on August 23, 2011. Caito Aff. (Doc. No. 18-1, at 1) ¶ 7; Doc. No. 18-1, at 8.

## B. Brian Baker

On November 1, 2011, the Middletown Police Officer Dennis Jordan observed what appeared to be a drug transaction taking place in the parking lot of Miller's Lounge. Jordan conducted a traffic stop of the vehicle that appeared to be involved in the deal, a white Chevrolet Astro Van, based on muffler and license plate light violations. Baker was the driver and owner of the van. The traffic stop culminated in Jordan arresting Baker for possession of a Schedule II controlled substance (Vicodin) and tampering with evidence. Jordan had Baker's van towed from the street and impounded at Mark's Towing. Doc. No. 18-4, at 3-6; Doc. No. 18-5, at 3.

On November 8, 2011, the police department sent Baker a notice informing him that his van was impounded and could be reclaimed by presenting proof of ownership and

---

[3]      In pertinent part, § 4513.61 provides that the police may dispose of an unclaimed vehicle to a salvage dealer and that the dealer may obtain title to the vehicle as follows:

> If the vehicle is to be disposed of to a motor vehicle salvage dealer or other facility as provided in section 4513.62 of the Revised Code, the sheriff or chief of police shall execute in triplicate an affidavit, as prescribed by the registrar of motor vehicles, describing the motor vehicle and the manner in which it was disposed of, and that all requirements of this section have been complied with. The sheriff or chief of police shall retain the original of the affidavit for the sheriff's or chief's records, and shall furnish two copies to the motor vehicle salvage dealer or other facility. Upon presentation of a copy of the affidavit by the motor vehicle salvage dealer, the clerk of courts, within thirty days of the presentation, shall issue to such owner a salvage certificate of title, free and clear of all liens and encumbrances.

Ohio Rev. Code § 4513.61.

4

paying the towing fee and storage charges. The notice also stated that the van would be declared a nuisance and disposed of if not reclaimed within ten days. Doc. No. 18-5, at 1-4.

Baker concedes that he received the impoundment notice from the police department and called the police department to claim his van. Baker claims that Officer Birk told him that he would not get his van back even if he beat the case. Birk then told Baker that if he wanted the van back he would have to pay the towing and storage fees. Baker told Birk that he could not pay those fees. Baker also states that he told Birk that he was innocent of the charges and would get his van back after the case was dismissed without having to pay the fees. The grand jury returned a no-bill on the drug charge, apparently because Baker had a prescription for the Vicodin. Baker states that he learned that his van was sold at an auction the same day the grand jury no-billed his case. Baker Aff. (Doc. No. 21-4) ¶¶ 4-5. Paperwork submitted by the City indicates that the police department obtained a salvage title to Baker's van on January 19, 2012. Doc. No. 18-2, at 5.

## C. Ira Hardy

On March 27, 2012, Middletown Police Officer Stephen Winters arrested Hardy after conducting a traffic stop for a headlight violation and then learning that Hardy was a suspect in a home invasion robbery. The police department impounded Hardy's Ford Taurus and had it towed to the police impound lot. On March 30, 2012, the police department issued Hardy the same notices about reclaiming his car and paying the fees and that the car would be declared a nuisance and disposed of after ten days if left unclaimed. Miller Aff. (Doc. No. 18-2) ¶ 9; Doc. No. 18-2, at 6-7; Doc. No. 18-6, at 3-4.

Hardy concedes that he received the notice. Hardy states that he contacted Officer Winters to reclaim his car. Hardy states further that Officer Winters told him not to worry about the notice and that he could get his car back by cooperating against a co-defendant. Hardy agreed and states that throughout the investigation of the case Officer Winters assured him that his cooperation would get his car back. Despite fulfilling his agreement, however, the police never returned Hardy's car. Hardy states further that after his guilty plea on reduced charges, Officer Winters took him to the impound lot but that his car was not there. Later, Officer Birk contacted Hardy and told him that his car had been sold at an auction on June 6, 2012 but that he could reclaim the car by paying the towing fees and storage charges. Hardy states that he did not think that paying the towing and storage fees at that point would undo the auction. Hardy Aff. (Doc. No. 21-3) ¶¶ 4-12. Paperwork submitted by the City indicates that it obtained the title to Hardy's car on April 11, 2012 as an unclaimed vehicle pursuant to § 4513.61. Doc. No. 18-2, at 8-9.

## II. Plaintiffs' Claims in the Case

Plaintiffs present constitutional claims concerning the City of Middletown's disposal of their vehicles.

First, Plaintiffs allege that the City violated their right to procedural due process by disposing of their cars as unclaimed and/or abandoned vehicles pursuant to § 4513.61 instead of treating them as evidence in a criminal case under Ohio Rev. Code §§ 2981.11 and 2981.12. Generally speaking, § 2981.11 requires a police department to safely keep property that has been lawfully seized until such time as it is no longer needed for

evidence.[4]  Section § 2981.12 requires a court order to dispose of unclaimed or forfeited property and sets out the procedures for doing so.

Second, Plaintiffs allege that the City's policy and custom of disposing of property without a hearing deprived them of their right of access to the Ohio courts.  Plaintiffs contend that they had valid claims for the return of their cars at the conclusion of their criminal cases and that the City's disposition of their cars by auction obstructed them from presenting their claims to the court.

Third, Plaintiff Henry alleges that the City's transfer of the title to his car to Mark's Towing constituted an unconstitutional private taking.[5]

Following the close of discovery, the City moved for summary judgment on each of Plaintiffs' claims.  In opposing the City's motion for summary judgment, Plaintiffs filed the affidavit of Carrie Carpenter, the former city prosecutor for the City of Middletown, to establish that the disposal of their cars was the result of an official custom or policy of the City.  Carpenter states in her affidavit that she devised the City's procedures for seizing and impounding vehicles and that it was the City's policy to retain vehicles in the impound lot until the towing and storage fees were paid in full.  Carpenter states further that it was the

---

[4]       In pertinent part, § 2981.11 states: "Any property that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise lawfully seized or forfeited and that is in the custody of a law enforcement agency shall be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose, and shall be disposed of pursuant to sections 2981.12 and 2981.13 of the Revised Code."  Ohio Rev. Code § 2981.11(A)(1).

[5]       Plaintiffs originally asserted a fourth cause of action alleging that the City was deliberately indifferent to the need to train its employees how to manage seized vehicles within the requirements of the constitution.  Plaintiffs, however, have abandoned this cause of action.  Doc. No. 21, at 14.

7

policy of the City to auction automobiles whose owners failed to respond to the notices or pay the fees due. Doc. No. 21-1. The City moves to strike Carpenter's affidavit and/or place it under seal on the grounds that it contains information subject to the attorney-client privilege. Doc. No. 23.

The outstanding motions have been fully briefed and a ready for disposition.

### III. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence

8

presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "If the evidence is merely colorable, . . .  or is not significantly probative, . . . the court may grant judgment."  Anderson, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

### A. Procedural Due Process

Plaintiffs first contend that the City's disposition of their cars via the procedure set forth in Ohio Rev. Code § 4513.61 violated their right to procedural due process.  Section 4513.61 permits the police to auction or dispose of vehicles in its possession if left unclaimed after ten days.  Plaintiffs contend that the City should have disposed of their cars pursuant to Ohio Rev. Code § 2981.11 and 2981.12.  As stated, these sections require the police to maintain seized property safely until it is no longer needed for evidence.

The Fourteenth Amendment prohibits the state from depriving any person of life, liberty or property without due process of law.  U.S. CONST. AMEND XIV § 1.  Procedural due process requires that the state provide notice and an opportunity to be heard before depriving a person of a property interest.  Warren v. City of Athens, 411 F.3d 697, 708 (6th Cir. 2005).  The plaintiff must first identify a protected property interest and a deprivation

of that interest by the state.  Id.  The court will then inquire whether the process provided in conjunction with that deprivation violated the plaintiff's right to due process.  Id.

Due process generally requires notice and an opportunity to be heard before the deprivation takes place.  Id. at 709.  In some situations, however, it is not possible or practicable for the state to provide pre-deprivation notice and an opportunity to be heard.  One instance where pre-deprivation notice and a hearing is not required is when the deprivation of property is caused by the random and unauthorized act of a state employee.  E.g., Parratt v. Taylor, 451 U.S. 527 (1981).  In that situation, the plaintiff's right to due process is violated only if state law does not provide a remedy adequate to redress the deprivation.  Id. at 543-44.  This rule does not apply, however, when the deprivation occurs according to an established state procedure.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982).  In this case, the deprivation of Plaintiffs' property resulted from the City's application of § 4513.61 - in other words, according to an established state procedure.  Consequently, Parratt does not apply in this case and whether the state provides Plaintiffs with an adequate post-deprivation remedy is irrelevant to the due process analysis.

Additionally, Courts have held that pre-deprivation notice and a hearing is not required before a city tows and impounds vehicles for parking or traffic violations or if the car appears to be abandoned or is a junk vehicle.  The car owner is, however, entitled to post-towing notice and an opportunity to be heard before the deprivation becomes final.  E.g., Ross v. Duggan, 402 F.3d 575, 584 (6th Cir. 2004); Coleman v. Watt, 40 F.3d 255, 260 (8th Cir. 1994);  Propert v. District of Columbia, 948 F.2d 1327, 1332-33 (D.C. Cir. 1991)(collecting cases).  The purpose of the post-towing hearing is to give the car owner an opportunity to challenge the lawfulness of the towing or the preliminary determination

10

that the car is junk or has been abandoned.  E.g., City of Los Angeles v. David, 538 U.S. 715 (2003); Propert, 948 F.2d at 1332-35.

In this case, Plaintiffs do not challenge the City's initial deprivation of their property interests in their cars.  In other words, they concede that the City was entitled to tow and impound their cars from their places of arrest without prior notice and an opportunity to be heard.  Doc. No. 21, at 7, 9 n.1.  Additionally, Plaintiffs concede that post-towing, they received adequate notice of impending action by the City to dispose of their cars.  Id. at 11. Plaintiffs, however, contend, that the City improperly declared their cars to be abandoned and improperly disposed of their cars as abandoned vehicles pursuant to § 4513.61. Plaintiffs argue that they did not abandon their cars - the City seized their cars subsequent to their arrests.  Therefore, Plaintiffs argue, the City should have treated their cars as evidence in a criminal case under § 2981.11 and kept them safe until the conclusion of their criminal cases.  Plaintiffs argue that they attempted to claim their cars and that the City violated their procedural due process rights by not giving them an opportunity to challenge the determination that they had abandoned their cars.

Having carefully reviewed the parties' pleadings, their arguments, and evidence of record, the Court concludes that the City is entitled to summary judgment on Plaintiffs' procedural due process claims.

First, to the extent that Plaintiffs contend that the City should have proceeded under §§ 2981.11 and 2981.12 to safeguard and then dispose of their cars, rather than § 4513.61, they have failed to allege constitutional due process violations.  It is well-established that state law violations due not provide a basis for a federal due process claim.  Smith v. City of Salem, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law does not ordinarily define the

parameters of due process for Fourteenth Amendment purposes, and that state law, by itself, cannot be a basis for a federal constitutional violation."); see also Tate v. District of Columbia, 627 F.3d 904, 908 (D.C. Cir. 2010) (holding, in a case with similar facts, that plaintiff's right to due process was not violated when the district auctioned her car in violation of the district code because she had adequate notice and an opportunity to contest traffic infractions before the auction).  Thus, the due process issue in this case is not whether the City should have proceeded under §§ 2981.11 and  2981.12 instead of § 4513.61 in disposing of Plaintiffs' cars.  The issue, rather, is whether, in proceeding under § 4513.61, the City failed to provide Plaintiffs with adequate notice and an opportunity to be heard before disposing of their cars.  Since Plaintiffs do not challenge the adequacy of notice, the issue is whether the City provided Plaintiffs with an opportunity to be heard before disposing of their cars.

Second, Plaintiffs erroneously argue that the City disposed of their cars as abandoned vehicles.  Plaintiffs also erroneously argue that § 4513.61 applies only to abandoned vehicles.  Section 4513.61 covers two categories of vehicles: 1) vehicles, including "abandoned junk motor vehicles,"[6] that come into the police department's possession through the performance of its duties; and 2) vehicles that are left in a public right-of-way for more than 48 hours. The record is clear, however, that the City did not determine that Plaintiffs had abandoned their cars.  Plaintiffs' cars came into the police department's possession through the performance of its duties.  The notices the City sent to Plaintiffs told them when and how they could reclaim their cars, and that if they failed to

_____

[6]     "Abandoned junk motor vehicle" is defined in Ohio Rev. Code. § 4513.63.

do so within ten days, their cars would be declared a nuisance and auctioned.  In other words, the City treated Plaintiffs' cars as <u>unclaimed</u>, not abandoned.  The plain language of § 4513.61 authorizes the police department to declare an unclaimed vehicle a nuisance and dispose of it ten days after notice is issued.  <u>Hamilton Acceptance Corp. v. Smith</u>, No. 03AP-115, 2003 WL 22681796, at *4 (Ohio Ct. App. Nov. 13, 2003).  A post-towing hearing, therefore, was not necessary to determine whether Plaintiffs had abandoned their cars.  Moreover, Plaintiffs concede that the initial towing and impoundment of their cars was lawful.  A post-towing hearing was not required because it would not have corrected any errors related to the initial deprivation of their cars - the principal purpose of the post-towing hearing.  <u>See</u> <u>Propert</u>, 948 F.2d at 1332-35.

Third, Plaintiffs did not "claim" their vehicles within the meaning of § 4513.61 merely by calling the police and verbally expressing their ownership interests in the cars.  Under § 4513.61, "claiming" a vehicle requires presenting proof of ownership of the vehicle and paying the towing and storage fees.  <u>Suru v. City of Cleveland</u>, No. 73639, 1999 WL 126141 at *4 (Ohio Ct. App. Feb. 25, 1999)("Appellants called the police department twice, saying that the car was theirs. Appellants never actually claimed the vehicle because they never presented any proof of ownership to the police and never paid any storage or towing costs.").  None of the Plaintiffs in this case has shown that he presented proof of ownership or paid the towing and storage fees within ten days of being notified of the impoundment of his car.  Consequently, Plaintiffs did not "claim" their cars within the meaning of § 4513.61.  <u>Id.</u>

Fourth, Plaintiffs actually received an adequate opportunity to be heard before the City disposed of their cars.  Plaintiffs could have retrieved their cars from the City by simply

providing proof of ownership and paying the towing and storage fees within ten days after the notices they admit they received were issued.[7]  Since, as noted, Plaintiffs do not challenge the lawfulness of the initial towing and impoundment of their cars, the opportunity to claim their cars by presenting proof of ownership and payment of the fees due was sufficient process, whether it be labeled a post-towing hearing or a pre-deprivation hearing, for purposes of the Fourteenth Amendment. In this regard, a concurring opinion in a case from the Seventh Circuit aptly noted:

> The additional process afforded Frier was notice of the seizure and whereabouts of his car <u>as well as the opportunity to claim it immediately for a nominal $10.00 towing charge</u>.  Although the ability to reclaim the cars might not be considered "process" in the traditional sense of the term, it is the functional equivalent of posting bond, which the Fifth Circuit has held to be adequate post-deprivation process in this context where the bond allows the petitioner immediately to reclaim his towed cars while securing his appearance in the State court to challenge the towing.

<u>Frier v. City of Vandalia</u>, 770 F.2d 699, 708 (7th Cir. 1985) (Swygert, S.J., concurring)(emphasis added)(citing <u>Breath v. Cronvich</u>, 729 F.2d 1006, 1011 (5th Cir. 1984)); <u>see also</u> <u>Richter v. Maryland</u>, 590 F. Supp.2d 730, 737-38 (D.Md. 2008) (no procedural due process violation when sheriff compacted plaintiff's car when he failed to pay $100 to release car from impoundment after lawful towing).

The Court recognizes that each Plaintiff had a personal circumstance which caused him to be unable to comply with all the requirements of § 4513.61 to reclaim his car.  For instance, Henry was in jail and then in the hospital.  He did, however, ask his friend,

---

[7]    The Court should note that apparently Plaintiff Henry only received constructive notice of the impoundment of his car.  Since, however, Henry does not claim he lacked notice of the requirements to reclaim his car, the fact that he received constructive rather than actual notice from the City is immaterial to the analysis of his claim.

14

Brewer, to retrieve his car from the police.  It appears, however, that Brewer was somewhat dilatory in trying to claim Henry's car.[8]  Hardy's affidavit indicates that Officer Winters withheld his car as leverage to obtain his cooperation against other suspects in the home invasion robbery.  In the meantime, the police department auctioned Hardy's car.  Hardy, however, does not allege that the police violated his constitutional rights by wrongfully withholding his car from him or that he would have complied with § 4513.61 but for Officer Winters' apparently illusory promise to help him get his car back.  Baker's affidavit indicates that he was unable to pay the towing and storage fees to reclaim his car.  Baker, however, does not allege that § 4513.61 does not provide adequate procedural safeguards for indigent car owners.

In other words, each of the Plaintiffs has equitable reasons why he could not or did not provide proof of ownership and pay the outstanding fees in accordance with the notice he received.  Plaintiffs, however, do not claim they were entitled to equitable tolling and the Court's own research has not discovered any case holding that the plaintiff was denied procedural due process because state law did not provide for equitable tolling of a deadline.

In summary, the record shows that the City afforded Plaintiffs adequate process before disposing of their cars by giving them an opportunity to reclaim their cars by presenting proof of ownership and paying the storage and towing fees.  Accordingly, the City is entitled to summary judgment on Plaintiffs' procedural due process claims.

B. Denial of Access to the Courts

---

[8]     Brewer's affidavit indicates that Henry asked him to claim the car on August 23, 2011, that Brewer did not call the police or Mark's Towing until August 29, 2011, and did not follow-up with either the police or Mark's Towing until September 7, 2011.

15

Plaintiffs allege that the City's disposal of their cars pursuant to § 4513.61 deprived them of their right of access to the courts. Plaintiffs contend that they had valid claims for the return of their cars at the conclusion of their criminal cases and that the City's disposition of their cars by auction obstructed them from presenting their claims to the court.

As applicable in this case, in a denial of access to the courts claim, "the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." Flagg v. City of Detroit, 715 F.3d 165, 173 (6th Cir. 2013). This claim has four elements: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors, (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable. Id. at 174.

Here, Plaintiffs' denial of access to the courts claims fail on the second element. While the City did dispose of the Plaintiffs' cars, as just discussed, Plaintiffs had sufficient opportunity to reclaim their cars before the alleged obstructive state action occurred. Moreover, Plaintiffs did not actually need to institute any special legal proceedings to reclaim their cars; they only needed to provide proof of ownership and pay the outstanding fees. Plaintiffs' claims, therefore, fail on at least the second element and possibly even the first element (since they could have reclaimed their cars without court intervention).

Accordingly, the City is entitled to summary judgment on Plaintiffs denial of access to the courts claims.

C. Private Taking

16

Finally, Plaintiff Henry alleges that the City effected an unconstitutional private taking by transferring the title to his car to Mark's Towing.  A private taking occurs when the government takes the plaintiff's property strictly for the purpose of conferring a private benefit on a particular private party.  Montgomery v. Carter County, Tenn., 226 F.3d 758, 766-67 (6th Cir. 2000).  Private takings are unconstitutional regardless of whether just compensation has been paid.  Id. at 766.  Private takings are rare, however, "because all that is required for a public use is a rational relationship to some ''conceivable public purpose.'"  Warren v. City of Athens, 411 F.3d 697, 705 (6th Cir. 2005).

In this case, at least one public purpose for transferring title to Henry's car to Mark's Towing is evident from the text of § 4513.61 - it abated a public nuisance.  Ohio Rev. Code § 4513.61 ("[T]he motor vehicle will be declared a nuisance and disposed of if not claimed within ten days of the date of mailing of the notice[.]");  Ross v. Duggan, 402 F.3d 575, 582 (6th Cir. 2004) (abatement of a nuisance is a public purpose).

Accordingly, the City is entitled to summary judgment on Plaintiff Henry's private taking claim.

## IV. Motion to Strike

The City moves to strike and/or seal the affidavit of Carrie Carpenter.  As stated, Carpenter is a former city prosecutor and avers that she devised the City's policy on towing, impounding, and disposing of vehicles.  Doc. No. 21-1. The City argues that Carpenter's affidavit violates the attorney-client privilege.

The attorney-client privilege applies as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are

17

at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived. <u>Reed v. Baxter</u>, 134 F.3d 351, 355-56 (6th Cir. 1998). "The attorney-client privilege," however, "only precludes disclosure of <u>communications</u> between attorney and client and does not protect against disclosure of the facts underlying the communication." <u>Humphreys, Hutcheson & Moseley v. Donovan</u>, 755 F.2d 1211, 1219 (6th Cir. 1985) (emphasis in original). Thus, "the fact of legal consultation or employment, clients' identities, attorney's fees and scope and nature of employment are not deemed privileged." <u>Id.</u> The Court concludes that none of the information in Carpenter's affidavit discloses <u>communications</u> between the City and Carpenter, and, therefore, that her affidavit does not breach the attorney-client privilege.

Carpenter avers that the City Law Director tasked her with developing the City's policy on seizing, towing and impounding cars. This statement concerns the fact of legal consultation and the scope and nature of her employment and is not privileged. Carpenter states that she developed the policy in consultation with Officer Birk and the City Law Director. This is a statement of fact which does not disclose any communications between Carpenter and the City. Carpenter then states that she reduced the policy to writing and supplied it to the police department.[9] Carpenter next states that she drafted the form notice letter the police department sends to car owners when their cars are impounded. Again, these statements do not disclose communications between Carpenter and the City. Finally, Carpenter states that it was the City's policy to hold cars in the impound lot until towing and storage fees are paid and to auction off cars left unclaimed or when the owner fails to pay

---

[9]    The Court notes that the written policy is not in the record.

18

the outstanding fees.  This statement appears to be either a statement of fact or Carpenter's opinion, but again it does not disclose any communications between her and the City.

In summary, the Court concludes that Carpenter's affidavit does not contain information protected by the attorney-client privilege.  Accordingly, the City's motion to strike and/or to seal Carpenter's affidavit is not well-taken and is **DENIED.**

Conclusion

For all of the reasons stated above, the City of Middletown's motion for summary judgment is well-taken and is **GRANTED.**  Plaintiffs' complaint is **DISMISSED WITH PREJUDICE.**  The City's motion to strike and/or seal the affidavit of Carrie Carpenter is not well-taken and is **DENIED.**


     **IT IS SO ORDERED**


Date January 12, 2015              s/Sandra S. Beckwith
                                        Sandra S. Beckwith
                           Senior United States District Judge